IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER (347) 443-7605, WITH INTERNATIONAL MOBILE SUBSCRIBER IDENTITY / ELECTRONIC SERIAL NUMBER 356424982617732, THAT IS STORED AT PREMISES CONTROLLED BY T-MOBILE | Case No. 23-mj-1990<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Benjamin M. Jacobs, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number (347) 443-7605, with International Mobile Subscriber Identity/Electronic Serial Number 356424982617732 ("the SUBJECT PHONE"), believed to have been used by Duane TAYLOR, that is stored at premises controlled by T-MOBILE (the "PROVIDER"), a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require T-MOBILE to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

1

2. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since 2010. I have training and experience in the investigation of violent crimes to include bank robbery, kidnapping, the exploitation of children, and narcotics trafficking. Throughout my federal law enforcement career, I have searched/examined numerous cellular telephones through device extraction to examine their contents for evidentiary purposes to include device location, text messages, and photographs.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18 U.S.C. § 1201(a)(1) – Kidnapping, and Title 18 U.S.C. § 2423(b) – Travel with intent to engage in illicit sexual conduct with a child, have been committed by Duane Taylor (TAYLOR). There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

## PROBABLE CAUSE

5. In summary, the following facts establish that there is probable cause to believe that TAYLOR, who used the SUBJECT PHONE, kidnapped a minor Victim ("VICTIM") in violation of l8 U.S.C. § 1201 and travelled with intent to engage in illicit sexual conduct with a child in violation of Title 18 U.S.C. § 2423(b), that evidence of this offense will be found within the requested cell site information regarding the SUBJECT PHONE from PROVIDER.

6. On August 31,2022, at approximately 7:45 a.m., City of Reading Police Department ("RPD") responded to a residence located in Reading, Berks County, Pennsylvania, for a report of a missing child. Upon arriving, officers spoke to the mother of the missing child[1]. She reported that she last saw her 13-year-old daughter, herein after referred to as the "VICTIM", at approximately 10:30 p.m. on August 30, 2022, when she observed her in her bed on the second floor of their residence. At approximately 7:00 a.m. on August 31, 2022, she noticed the VICTIM was no longer in her bedroom. She checked the rest of her home, both inside and outside, and could not locate her daughter. She observed the back door of her residence was wide open. She then called law enforcement. Law enforcement observed a broken chain lock on the door. The residence had a working surveillance camera.

7. Law enforcement officers reviewed surveillance footage from the interior surveillance camera which captured the living room area of the VICTIM's residence. Based on the investigation, the time is approximately 1:50 a.m. to 2:10 a.m. The recording captured a person, later identified as TAYLOR, entered the living room area wearing a light-colored t-shirt with a design on the chest area and gloves. TAYLOR also had a light-colored sheet covering his head and part of his upper body. TAYLOR slowly proceeded to the stairs that lead to the second floor and went to the upstairs part of the residence. Shortly after, the surveillance depicted the VICTIM walking down the stairs, though the living room, ultimately out of camera view. TAYLOR walked behind the VICTIM while covered in a sheet.

---

[1] The mother of the missing child is a person who is known to law enforcement and has been interviewed in connection with this investigation. The information provided by the mother is believed to be truthful and credible as aspects have been independently verified by this investigation. The mother provided information as a victim/witness and not in anticipation of receiving any financial compensation or benefit in connection with any case. The mother is identified anonymously herein in order to protect the identity of the minor victim and to ensure safety.

8. Officers also reviewed surveillance footage from the Glenside Housing Authority, which is near to the VICTIM's residence. At l:47 a.m. a silver-colored Chevrolet Traverse arrived in the Glenside housing area and circled the area. The Traverse did not have the vehicle's lights activated. At 1:49 a.m., the Traverse parked on Avenue B, which is approximately one block from the VICTIM's residence. At 1:50 a.m., a male wearing a white colored shirt got out of the Traverse and walked towards the area of the VICTIM's residence. At 2:10 a.m., a male, later identified as TAYLOR, is observed carrying the VICTIM to the Traverse and forcing her into the trunk area of the vehicle.

9. The VICTIM's mother reported to police that she was recently in a domestic dispute with her former boyfriend, TAYLOR. She stated TAYLOR owns a silver-colored Chevrolet Traverse registered to her address in Reading, Pennsylvania. She stated the last time she was with TAYLOR was approximately two weeks ago. The VICTIM's mother provided TAYLOR's address as 897 Glenmore Ave., in Brooklyn, New York. The VICTIM's mother did not give TAYLOR permission to take her daughter. The VICTIM's mother was shown surveillance footage. When asked if Duane TAYLOR was in the footage she stated, "it looks like him."

10. RPD investigators contacted New York City Police Department ("NYPD") and requested information on TAYLOR. NYPD confirmed a domestic incident occurred approximately two weeks ago in their jurisdiction between the mother of the VICTIM and TAYLOR. NYPD conducted a security check at TAYLOR's residence. TAYLOR was inside the residence and allowed the officers to search his apartment for the VICTIM. The officers did not

4

find the VICTIM in the residence. NYPD took a photograph of TAYLOR and sent it to RPD Investigators who observed that TAYLOR was wearing the same t-shirt as was observed in the surveillance footage from the VICTIM's residence and the Glenside Housing area cameras, described above.

11. NYPD investigators reviewed video surveillance in the area surrounding the TAYLOR's residence. The recorded video footage showed that TAYLOR and the VICTIM entered the residence at approximately 6:00 a.m. The footage shows the VICTIM with what appeared to look like a rope around her neck. TAYLOR and the VICTIM left the residence at approximately 7:00 a.m. TAYLOR guided the VICTIM who now had a cover over her head.

12. On August 31, 2022, an arrest warrant for was filed by RPD Investigators charging TAYLOR with kidnapping of a minor, in violation of Title 18, C.S.A, Section 290l and related offenses, and he was taken into custody at his residence. When arrested, TAYLOR had the SUBJECT PHONE on his person. Subsequently, on September 2, 2022, a federal arrest warrant and detainer were filed charging TAYLOR with a violation of 18 U.S.C. § 1201, kidnapping.

13. On the same date, NYPD located TAYLOR's silver-colored Chevrolet Traverse, within six blocks of TAYLOR's residence. According to Pennsylvania Department of Transportation records, TAYLOR's Traverse was issued Pennsylvania license plate number LTP2289. However, on this day, the license plate on TAYLOR's Traverse was displaying Pennsylvania license plate LRW1487. Law enforcement conducted a security check of the vehicle for the VICTIM. She was not located in the vehicle. Officers observed a cable cord in the

5

trunk area of the vehicle and sheets covering the windows, which obscured the interior of the vehicle from the outside. The vehicle was subsequently secured and transferred to a secured law enforcement area located in the Southern District of New York.

14. Pennsylvania license plate number LTP2289 is registered to a Chevrolet Traverse in the name Duane TAYLOR, at the VICTIM's residence in Reading. Pennsylvania. PA license plate LRW1497, which was on the vehicle, is registered to a different individual, referred to herein as Person #1, at an address in Reading, Pennsylvania. A RPD report shows Person #1 reported his license plate was stolen sometime between August 30, 2022, and September 1, 2022. During a search of TAYLOR's vehicle, a third license plate was recovered, Pennsylvania license plate number KZP5418. This license plate is registered to another individual, referred to herein as Person #2, also in Reading, Pennsylvania.. A RPD Detective confirmed that the plate was missing from the vehicle. The addresses registered to both stolen license plates and the physical location where the vehicles were parked when their license plates were stolen, were near the VICTIM's residence.

15. On August 31, 2022, at approximately 5:37 p.m., NYPD received a 911 call from a citizen who reported to police that she was with a minor female who asked her for help because she was kidnapped from Pennsylvania.

16. NYPD responded to the location of the citizen and the minor female, later identified as the VICTIM who was kidnapped in Reading, Pennsylvania. Police found the VICTIM approximately one block from TAYLOR's residence.

17. The VICTIM was transported to Queens General Hospital for an evaluation. Medical staff reported that there were indications of trauma to the VICTIM's vaginal area.

18. On September 1, 2022, a search warrant was authorized by the Honorable Magistrate Judge Vera Scanlon in the Eastern District of New York, to search TAYLOR's residence. The search was executed on September 2, 2022. Among the items seized from TAYLOR's residence were four mobile devices and other physical evidence. While TAYLOR has a roommate, TAYLOR was the sole occupant of a bedroom in the apartment and all the mobile devices seized from his residence were in his bedroom. Also, in his bedroom agents found mail in Duane TAYLOR's name. Further, TAYLOR's New York driver's license has the same address.

19. On September 2, 2022, a search warrant was authorized by the Honorable Andrew E. Krause in the Eastern District of New York, to search TAYLOR's Chevrolet Traverse. Agents searched the vehicle on September 6, 2022. Among the items they seized from the Traverse was a mobile telephone, cable cords, and sheets.

19. Based on my training and experience, people that commit crimes such as kidnapping use electronic devices to facilitate and commit their offenses. For example, the VICTIM's mother reported on August 30, 2022, she received a series of text messages from TAYLOR using telephone number 347-443-7605, which is the number associated with the SUBJECT PHONE, which was located on his person when he was arrested, informing her that his car had been stolen. Based on these text messages, in the context of the ongoing investigation, it is evident that TAYLOR was planning the kidnapping in advance and was texting the VICTIM's mother to

7

try to distance himself from his planned criminal activity. On August 31, 2022, after TAYLOR kidnapped the VICTIM, he sent a text to the VICTIM's mother that stated, "You sound way too calm for that type of situation to be going down." Consequently, I believe that the defendant's use of the SUBJECT PHONE, which the defendant had on his person when he was arrested and used to communicate with the VICTIM's mother about the kidnapping, shows the defendant's use of a mobile telephone in the planning of, and in furtherance of, his kidnapping of the VICTIM.

20. On September 16, 2022, a search warrant was authorized by the Honorable Pamela Carlos in the Eastern District of Pennsylvania, to search and extract all evidentiary items from TAYLOR's seized cellular telephones, to include the SUBJECT PHONE. Upon review of SUBJECT PHONE, there were multiple images/videos of illicit sexual acts between the TAYLOR and the VICTIM, which were recorded on August 31, 2022, during the time TAYLOR had control of the VICTIM. Contained with those videos, in addition to unrelated captured images, were coordinates within the images showing the physical location of the phone at the time the images/videos were taken. Those locations covered August 26-27, 2022, then more location information for August 31, 2022. From August 27-30, 2022, there is no location data within the contents of SUBJECT PHONE.

21. I observed during the review of the SUBJECT PHONE extraction, TAYLOR was utilizing SUBJECT PHONE to send text messages to numerous numbers, to include VICTIM's mother, from August 26, 2022, beginning at approximately 7:56 a.m., through August 31, 2022, at approximately 6:22 p.m. TAYLOR also utilized the SUBJECT PHONE to make and receive telephone calls from August 26, 2022, at approximately 5:42 a.m., to August 31, 2022, at approximately 2:24 p.m. These SUBJECT PHONE contacts via text messages and phone calls

would have to utilize cellular phone network cell towers/sites to connect those conversations, thus producing cell site information showing TAYLOR's location leading up to, and during the act of kidnapping the VICTIM.

22. In my training and experience, I have learned that T-MOBILE is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

23. Based on my training and experience, I know that T-MOBILE can collect cell-site data about the SUBJECT PHONE. I also know that wireless providers such as T-MOBILE typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes. A preservation request was sent on November 8, 2023 (T-MOBILE Tracking

9

Number 4724739), although T-MOBILE has advised cell-site records produced from both text messages and cellular telephone calls are maintains for up to two years.

24. Based on my training and experience, I know that cellular service providers also collect timing advance data. Timing advance data estimates the approximate distance of the cellular device from a cellular tower based on the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data. While cellular service providers such as AT&T and T-MOBILE refer to this data simply as timing advance data, VERIZON refers to it at Real Time Tool (or "RTT") data.

25. Based on my training and experience, I know that wireless providers such as T-MOBILE typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as T-MOBILE typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE's user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

26. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

27. I further request that the Court direct T-MOBILE to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on T-MOBILE, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

*/s/ Benjamin Jacobs*
Benjamin M. Jacobs
FBI Special Agent

Subscribed and sworn to before me on November   17, 2023

/s/ PAMELA A. CARLOS
HONORABLE PAMELA A. CARLOS
UNITED STATES MAGISTRATE JUDGE

11

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular device assigned call number (347) 443-7605, IMSI: 356424982617732 ("the SUBJECT PHONE"), with an unknown subscriber at this time, that is in the custody or control of T-MOBILE, a wireless communications service provider that is headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054. See T-MOBILE Tracking Number, from prior preservation letter, **4724739** (November 9, 2023).

## ATTACHMENT B
**Particular Things to be Seized**

**I.     Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period August 26, 2022 – August 31, 2022:

a. The following information about the customers or subscribers associated with the SUBJECT ACCOUNT:

   i. Names (including subscriber names, usernames, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long-distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

      viii.    Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the SUBJECT PHONE, including:

    i.  the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

    ii.    information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.

    iii.    Information associated with each communication to and from the SUBJECT PHONE during the time period of August 26, 2022 – August 31, 2022 including:

        1.    Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

        2.    Source and destination telephone numbers;

        3.    Date, time, and duration of communication; and

        4.    All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the SUBJECT PHONE will connect at the beginning and end of each communication.

**II.      Information to be Seized by the Government**

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of 18 U.S.C. § 1201, Bank Robbery and 18 U.S.C. § 2423, travel with intent to engage in illicit sexual conduct with a child, have been committed, by DUANE TAYLOR, during the time period of August 26, 2022 – August 31, 2022.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.